**SOUTHERN RAILWAY COMPANY,**
Plaintiff,

v.

**UNITED STATES** of America, and Interstate Commerce Commission,
Defendants.

**Civ. A. No. 3418.**

United States District **Court**
E. D. Virginia,
at Richmond.

Argued March 15, 1963.

Decided April 23, 1963.

R. Granville Curry, Washington, D. C. (Thomas B. Gay, Richmond, Va., Armistead L. Boothe, Alexandria, Va., and Henry J. Karison, Washington, D. C., on the brief), for plaintiff.

Stanton P. Sender, Washington, D. C. (Robert W. Ginnane, Gen. Counsel of Interstate Commerce Commission, Lee

Loevinger, Asst. Atty. Gen., Joel E. Hoffman, Attorney, Department of Justice, Claude Vernon Spratley, U. S. Atty., Richmond, Va., and MacDougal Rice, Asst. U. S. Atty., Alexandria, Va., on the brief), for defendants Interstate Commerce Commission and the United States of America.

Clarence Raymond, Louisville, Ky. (Meade T. Spicer, Jr., Richmond, Va., Joseph L. Lenihan, Louisville, Ky., on the brief), for Louisville & Nashville Railroad Company intervening defendants.

Before BRYAN, Circuit Judge, and JOHN PAUL and LEWIS, District Judges.

ALBERT V. BRYAN, Circuit Judge.

Freight rates of the Louisville & Nashville Railroad Company were arraigned before the Interstate Commerce Commission by the Southern Railway Company as unlawful because unjust, unreasonable and discriminatory.[1] The accused tariffs apply to the movement of coal from Kentucky, Tennessee and Alabama mines to Krannert, Georgia. Its complaint dismissed by the Commission,[2] Southern brought this suit to vacate the dismissal. The Commission, we think, was clearly right and its order will not be disturbed.

Southern's position and contention, the amply-based findings of the Commission demonstrate, are not only unsustainable in fact or in law, but its grievance is largely its own fault. Facts found by the Commission on evidence only slightly in conflict show that both railroads originated coal shipments into Birmingham from nearby Alabama mines, and from Tennessee and Kentucky mines (only the L&N serves Harlan, Kentucky) into Knoxville. Beyond these two cities Southern had direct lines to Krannert, an important coal market near Rome. But L&N did not enter Krannert. Its lines run from Knoxville as far as Atlanta and from there, as from Birmingham, it moves over the Central of Georgia

Railway to Krannert. In each instance the L&N-Central average haul is almost twice that of the comparable Southern-L&N haul and quite circuitous.

Prior to 1954 Southern and L&N maintained through routes with joint rates for coal from these sources to Krannert, both via Knoxville-Krannert and Birmingham-Krannert. That year Southern published a substantial rate reduction on these routes for fine (but not lump) coal it originates. It refused to allow L&N to participate in the lower rate.

The result, of course, was to leave the L&N-Southern joint freight charges to Krannert for all coal the same as these had been prior to 1954. L&N then arranged for through routes with Central of Georgia with joint rates on fine coal from the Kentucky-Tennessee and Alabama origins to Krannert equal to Southern's.

Thereupon Southern in effect tendered to L&N the reduced rate it had established for itself and had previously declined L&N. L&N expressed its willingness to join Southern in this rate, with divisions more favorable than allowed Central but apparently less than those with Southern on the *all* coal joint rate. These divisions, especially on the haul from Harlan where the greater part of the L&N shipments originated, were not agreeable to Southern and the arrangement was not consummated.

Complaint to the Commission by Southern followed. It was, and is, that the L&N rate to Krannert on all coal via Southern—the joint rate maintained by Southern with L&N since prior to 1954— was unjust and unreasonable, contrary to § 1(4), as well as discriminatory, contrary to § 3(4), of the Interstate Commerce Act. 49 U.S.C. §§ 1(4) and 3(4). On the first point Southern's argument is this: that concededly the distances of the L&N-Central through routes are far greater than the L&N-Southern, yet the rates over the latter are higher than

1. Interstate Commerce Act, as amended, 49 U.S.C. §§ 1(4) and 3(4).

2. Southern Railway Company v. Louisville & Nashville Railroad Company, No. 32654, Nov. 15, 1961, 315 I.C.C. 175.

those of the L&N-Central. On discrimination, Southern argues that L&N is obligated to establish with Southern the same joint rates it has with Central without exacting the same division of the charges as prevails between L&N and Central.

While § 1(4) makes it "the duty of every common carrier * * * to establish reasonable through routes with other such carriers, and just and reasonable rates", the burden is upon Southern to establish those facts. Louisville & N. R. R. Co. v. United States, 238 U.S. 1, 11, 35 S.Ct. 696, 59 L.Ed. 1177 (1915). In this the Commission finds Southern failed. To that end, the complainant offered (1) evidence showing the L&N-Southern distances to be much less than L&N-Central's yet the L&N-Southern rates well above those of L&N-Central, thus revealing the rates for L&N-Southern as unreasonably and unfairly high when compared to L&N-Central's rates; and (2) evidence that the per-car, per-car-mile and per-ton-mile revenues from L&N-Southern, if the same rates were used as are applied on L&N-Central, would appreciably exceed the returns from the L&N-Central connection. But this proof did not *require* the Commission to make a factual determination of unjustness and unreasonableness. Louisville & N. R. R. Co. v. United States, supra, 238 U.S. 1, 11, 12, 35 S.Ct. 696, 698, 59 L.Ed. 1177 (1915). Refusal to accord the evidence that weight was well within the range of Commission judgment and, so, conclusive here. Chicago, B. & Q. R. R. Co. v. United States, 60 F. Supp. 580 (E.D.Ky.1945).

Absence of the discrimination forbidden in § 3(4) of the Act is evident in our narrative of the facts. The parties agree with the Commission that division of the charges between the railroads was not properly in the case. Therefore, Southern could not spurn L&N's suggestion of the same rates to Southern as existed with Central on the ground of an unsatisfactory sharing of the revenues. Acceptance of the rates, the Act expressly acknowledges, would not have precluded

Southern from seeking a prescription of other divisions by the Commission. 49 U.S.C. § 15(6).

The National Transportation Policy as declared in the Act, 49 U.S.C. preceding § 1, has certainly not been transgressed by the Commission. Nor do we see the case as involving the long-and-short-haul prohibitions of § 4. 49 U.S.C. § 4. Other assaults of Southern upon the order of the Commission are also rejected.

The complaint will be dismissed.